# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4182 | **DATE** | 12/21/2001 |
| **CASE TITLE** | Motorola vs. Vosi Technologies | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  The disputed claim terms are construed as set forth in this Memorandum Opinion Order. The case is set for a status hearing on 1/3/02 at 9:30 a.m. for the purpose of setting a schedule for completion of discovery and the filing of dispositive motions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | **DEC 27 2001** | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | **33** |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | DEC 21 PM 3:55 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

**DOCKETED**
**DEC 27 2001**

MOTOROLA, INC. )
)
    **Plaintiff,** )
)
v. ) No. 01 C 4182
)
VOSI TECHNOLOGIES, INC. and )
IVANO STAMEGNA, )
)
    **Defendants.** )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Motorola, Inc. sued Vosi Technologies and Ivano Stamegna for a declaratory judgment that three patents issued to Stamegna and owned by Vosi are not infringed. Vosi subsequently filed a counterclaim against Motorola for patent infringement. The Court held a claim construction hearing on October 5, 2001. This opinion explains the Court's construction of the disputed claims of the patents.

### Background

Vosi is the owner of three patents, U.S. Patent Nos. 5,797,088; 6,058,298; and 6,085,078, which refer to a "vehicular audio system incorporating detachable cellular telephone." The '088 patent was filed on October 30, 1995 and issued on August 18, 1998. The two other Vosi patents were filed as continuation applications.[1] The defendants also have one pending

---

[1] All the Vosi patents have the same specification; only the claim language differs. Accordingly, all references to the patent specifications will be to the '088 patent.

33

application before the U.S. Patent Office, which was filed on May 1, 2000. The purpose of the Vosi patents is to "[i]ntegrate[] a cellular telephone with a vehicular audio system to share components, to eliminate duplication, to reduce costs and diminish the complexity of the overall system." U.S. Patent No. 5,797,088, col. 2, lines 11-14. At issue here are claims 1-5 of the '298 patent; claims 9 and 10 of the '078 patent; and claim 3 of the '088 patent.

*The '088 Patent*

Claim 3 of the '088 patent describes a "vehicular audio/cellular telephone system" which comprises (among other things) "a *tape recorder* being capable of *recording telecommunications* received and transmitted through said cellular telephone."

*The '298 Patent*

Claims 1-5 of the '298 patent describe:

1. An audio/mobile telephone system comprising:
   \*\*\*
   *an antennae means* for transmitting and receiving mobile telephone communication signals; and

   a *recorder means* connected to said audio system and said mobile telephone for recording communications passing through said mobile telephone.

2. The audio/mobile telephone system of claim 1 wherein said mobile telephone is detachable and capable of use at a location distant from said audio system.

3. The audio/mobile telephone system of claim 1 wherein said audio signals include standard AM/FM radio signals.

4. The audio/mobile telephone system of claim 1 where in said audio signals include memory stored on an audio compact disc (CD).

5. The audio/mobile telephone system of claim 1 wherein said audio system includes a standard tape recorder.

*The '078 Patent*

Claims 9 and 10 of the '078 patent describe:

9. The audio/mobile telephone system ... further comprising a *recording means* for *recording communications* through said mobile telephone.

10. The audio/mobile telephone system of claim 9 wherein said *recording means* is located in said audio system.

In their briefs, the parties debate numerous terms contained in the patents. However, discussions at the claim construction hearing and the parties' post-hearing briefs made clear that the disputes center around the terms "recording means," "recording communications," and "antennae means." We thus focus our discussion on these terms.

**Legal framework**

"An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the device accused of infringing." *Kraft Foods, Inc. v. International Trading Company*, 203 F.3d 1362, 1366 (Fed. Cir. 2000) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995)). At this point, we are concerned only with the first step, claim construction, which is a question of law to be decided by the Court. *Markman*, 52 F.3d at 977-79.

In interpreting a patent claim, we look first to the "intrinsic" evidence, namely the language of the claims themselves, the patent specification, and the prosecution history. *Id.* at 979. If the claim language is clear on its face, consideration of other intrinsic evidence is restricted to determining whether it reflects a deviation from the claim language. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 231 F.3d 859, 865 (Fed. Cir. 2000). Extrinsic evidence may

not be used to construe a claim unless the language remains ambiguous after consideration of all the intrinsic evidence. *Id.* at 866. In analyzing claim language, the words of the claim are given their ordinary and customary meaning unless a special definition is chosen and plainly stated in the patent. *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).

Under 35 U.S.C. § 112, ¶ 6, a patent applicant may choose to state claims in a "means-plus-function" format, as opposed to claiming a specific structure in the patent claims. Means-plus-function limitations "recite a specified function to be performed rather than the structure, material, or acts for performing that function." *IMS Technology, Inc. v. Haas Automation*, 206 F.3d 1422, 1429-30 (Fed. Cir. 2000). Such limitations cover the particular structure described in the specification and all equivalents thereof. *Id.* at 1430 (citing 35 U.S.C. § 112, ¶ 6). Our task in construing a means-plus-function limitation involves "identifying the claimed function and determining the corresponding structure or act disclosed in the specification." *Id.* (citing *Chiuminatta Concrete Concepts, Inc. v. Cardinal Industries, Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998)).

## Discussion

As noted above, the parties' disputes center around the following terms: "recorder means;" "recording communications;" and "antennae means."

1.  *"Recorder Means"*[2]

The parties agree that the claims containing the term "recorder means" are means-

---

[2] As an initial matter, the parties agree that the terms "recorder means" (as used in claim 1 of the '298 patent) and "recording means" (as used in claim 9 of the '078 patent) should be interpreted in the same way. We will refer only to the term "recorder means", but our discussion shall apply equally to the term "recording means."

plus-function claims. As discussed above, our task is to determine the function of the "recorder means," and to identify its corresponding structure in the specification. *See, e.g., IMS Technology*, 206 F.3d at 1430.

Claim 1 of the '298 patent claims an audio/mobile telephone system comprising, among other things, "a recorder means connected to said audio system and said mobile telephone for recording communications passing through said mobile telephone." U.S. Patent No. 6,059,298, col. 8, lines 14-16. Vosi argues that the function of the "recorder means" is "recording communications;" it further defines "recording communications" as the "storing on some storage medium, for later retrieval, the information transmitted through the telephone." Vosi's definition is derived from various scientific dictionaries. *See* Defendants' Claim Construction Brief at 5-6.

Motorola argues that the function of the "recorder means" should be limited exclusively to "recording *voice* communications." To arrive at that conclusion, Motorola points to a reference in the patent specification to the recording of "voice communications." *See* U.S. Patent No. 5,797,088, col. 6, lines 45-50. However, nothing in the claim itself limits the function of the "recorder means" exclusively to voice communications, and accordingly Motorola's attempt to read in such a limitation is improper. Indeed, when construing claims, a court must not "import [a] limitation ... from the written description into the claim" where the claim language is clear on its face. *Smiths Industries Medical Systems, Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1357 (Fed. Cir. 1999); *Comark Communications, Inc. v. Harris Corporation*, 156 F.3d 1182, 1186 (Fed. Cir. 1998) (limitations from the specification are not to be read into the claims). Further, "[w]hen construing the functional statement in a means-plus-function

limitation, [the court] must take great care not to impermissibly limit the function by adopting a function different from that explicitly recited in the claim." *Generation II Orthotics, Inc. v. Medical Technology, Inc.*, 263 F.3d 1356, 1364-65 (Fed. Cir. 2001). Based on these principles, we decline to read into the claim language a requirement that the recorder means have the function of recording only voice communications.

In short, we find that the function of the "recorder means" is simply recording communications – without any further limitation. As for the definition of "recording communications," we adopt the dictionary definition proposed by Vosi -- which both experts agree constitutes an ordinary and plain meaning of the terms to one skilled in the art. *See Kraft Foods, Inc. v. International Trading Company*, 203 F.3d 1362, 1366 (Fed. Cir. 2000) (a claim term should be "given its ordinary meaning unless the specification or prosecution history provide a special, different meaning or definition"). Accordingly, we define the term "recording communications" as the "storing on some storage medium, for later retrieval, information transmitted from one point to another."[3] We finally conclude, and the parties agree, that the terms "communications" (as used in claim 1 of the '298 patent) and "telecommunications" (as used in claim 3 of the '088 patent) have the same meaning.

After identifying the function of a claim limitation, we must next turn to identifying the structure in the patent specification that corresponds to the claimed function. *See, e.g., Smiths Industries*, 183 F.3d at 1357. We find, and the parties agree, that the structure

---

[3] A court can properly consider a dictionary definition in construing a claim so long as the dictionary is not used to enlarge the scope of a term beyond a limited meaning given to it by the inventor. *Vanguard Products Corporation v. Parker Hannifin Corporation*, 234 F.3d 1370, 1371 (Fed. Cir. 2000).

identified in the specification for "recording communications" is a "tape recorder that records incoming and outgoing voice communication from the cellular telephone."

Section 112, ¶ 6 further provides that the scope of a means-plus-function claim includes not only the identified structure (here, the tape player) but also any "equivalents thereof." 35 U.S.C. § 112, ¶ 6. An equivalent structure is one that "performs the claimed function in substantially the same way to achieve substantially the same result as the corresponding structure described in the specification." *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999). The parties hotly contest what constitutes an "equivalent" to the structure identified in the specification – the tape recorder. Vosi proposes that "equivalents" include such things as audiocassette recorders, hard disc drives, floppy disk drives, CD-ROMs, "static semiconductor memory," "EEPROM," and other items that Vosi fails to explain fully. In contrast, Motorola essentially argues that none of Vosi's examples constitute "equivalents" save an audiocassette recorder.

This issue, however, is for another day. Our task here is to construe the claims, an issue of law; the parties' debate regarding equivalents to the tape recorder identified in the specification concerns, at least in part, a question of fact. *See IMS Technology*, 206 F.3d at 1430 (equivalence under Section 112, ¶ 6 is a question of fact); *Odetics*, 185 F.3d at 1268-69 (whether accused device is a § 112 equivalent of the described structure is a question of fact). It would be difficult, if not impossible, to identify all conceivable equivalents at this juncture – particularly on the relatively slim record provided by the parties. These issues are thus more appropriately addressed on summary judgment or at trial.

2.  *Antennae Means*

Although both parties assert that the meaning of the term "antenna" is in dispute, we believe that the real dispute lies in the meaning of the term "antennae means," as used in claim 1 of the '298 patent and the '078 patent.[4] Indeed, the parties' briefs reveal not a disagreement with what constitutes an "antenna," but rather whether the Vosi patents cover an invention that makes use of more than one antenna, as opposed to a single, dual-function antenna.

As an initial matter, we will adopt the definition of "antenna" from the McGraw-Hill Dictionary of Scientific & Technical Terms, 5th Edition: "a device used for radiating or receiving radio waves." *See* Exhibit 5 to Defendants' Claim Construction Brief. Defining this term does not resolve the parties' dispute regarding single versus multiple antennas, and so we move to an analysis of the term "antennae means."

a.  *The '298 Patent*

Claim 1 of the '298 patent claims "an antennae means for transmitting and receiving mobile telephone communication signals." We conclude that the term "antennae means" (like "recorder means") is a means-plus-function limitation. Generally, if an applicant uses the word "means" in a claim element, it is presumed to invoke means-plus-function treatment under § 112, ¶ 6. *See, e.g., Micro Chemical, Inc. v. Great Plains Chemical Co., Inc.,*

---

[4]Claim 1 of the '298 patent refers to "an antennae means." It is our understanding that the word "antennae" is a version of the plural form of "antenna." *See* Webster's Third New International Dictionary, p. 91 (Unabr. Ed. 1993). However, the applicant's use of the word "an" before "antennae" suggests that the word "antennae" was intended to be singular. In any event, Vosi does not argue that the use of the word "antennae" denotes the plural, so we see no reason to attach any significant to the usage.

194 F.3d 1250, 1257 (Fed. Cir. 1999). This presumption may be rebutted, however, if the claim element does not recite a corresponding function or if the element recites sufficient structure or material for performing that function. Neither exception applies here, and the claim element thus invokes § 112, ¶ 6 treatment. *Id.*

Our first task then is to identify the function that corresponds to the term "antennae means." We conclude that the function of the "antennae means" is "transmitting and receiving mobile telephone communication signals," as specifically stated in the claim element. *See* U.S. Patent No. 6,058,298, col. 8, lines 12-13. Under § 112, ¶ 6, we next must identify the structure in the specification which performs the recited function. *Id.* (citing *Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302 (Fed. Cir. 1999).

Based on our review of the patent specification, we conclude that the corresponding structure identified in the specification is a single, dual function antenna that receives AM/FM signals and receives and transmits cellular telephone signals. Accordingly, the Vosi patents will be construed to cover that type of antenna and any "equivalents thereof." Again, we find that it is premature to determine the equivalents of this corresponding structure, and we reserve this analysis for a future date. That said, we do not believe that the location of the antenna on the vehicle's "exterior" is a necessary part of the structure. Section 112, ¶ 6 "does not permit incorporation of structure from the written description beyond that necessary to perform the claimed function." *Micro Chemical*, 194 F.3d at 1258. As the physical location of the antenna does not appear to be necessary to the claimed function of "transmitting and receiving mobile telephone communication signals," we decline to construe the corresponding structure to require a particular placement of the "antennae means."

b.   *The '078 Patent*

The '078 patent differs from the '298 patent in that Claim 1 of the '078 patent refers to a "first antennae means" and a "second antennae means." The claim relating to a "first antennae means" appears to refer to the antenna that is part of the mobile telephone itself (and that is used by the telephone when it is away from the owner's vehicle); in any event, this term does not appear to be in dispute. The parties' dispute focuses instead on the term "second antennae means," which both parties seem to suggest should receive the same interpretation as "antennae means" in the '298 patent. We conclude that the additional term "second" serves only to distinguish the shared antennae means from the antenna physically located on the mobile telephone. Accordingly, we interpret the term "second antennae means" the same way as the term "antennae means," and our above discussion applies equally to the '078 patent.

3.   *Tape Recorder*

As a final matter, the parties also engage in some debate regarding the meaning of the term "tape recorder" in the '088 patent. Unlike the continuation patents, which identify only a "recording means" or "recorder means," the '088 patent provides a specific structural limitation in the claim itself. Motorola encourages us to define "tape recorder" as an audiocassette that records voice communications. While we do not believe that the claim language indicates that the "tape recorder" can *only* record voice communications on a traditional audiocassette, we do conclude that the "tape recorder" of the '088 patent is limited to a device that requires electromagnetic tape for recording.

**CONCLUSION**

The disputed claim terms are construed as set forth in this Memorandum Opinion

-10-

and Order. The case is set for a status hearing on January 3, 2002 at 9:30 a.m. for the purpose of setting a schedule for completion of discovery and the filing of dispositive motions.

Dated: December 21, 2001

_____
MATTHEW F. KENNELLY
United States District Judge