# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4182 | **DATE** | 8/19/2002 |
| **CASE TITLE** | Motorola vs. Vosi Technologies | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached memorandum opinion and order, Motorola's motion for protective order (86-1) is granted in part and denied in part, and its fourth motion to compel (80-1) is denied.
(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 22 2002 date docketed | 93 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MOTOROLA, INC., )
)
          Plaintiff, )
)
vs. ) Case No. 01 C 4182
)
VOSI TECHNOLOGIES, INC. and )
IVANO STAMEGNA, )
)
          Defendants. )

DOCKETED
AUG 2 2 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In this case, plaintiff Motorola Inc. seeks a declaratory judgment that it is not infringing patents held by defendants Vosi Technologies, Inc. and Ivano Stamegna, or alternatively that those patents are invalid. Vosi has counterclaimed for patent infringement, misappropriation of trade secrets, breach of contract, and fraud. This Memorandum Opinion and Order concerns two motions filed by Motorola, one concerning its own attorney-client privilege and the other concerning Vosi's attorney-client privilege.

1. **Motorola's motion for protective order**

In its counterclaim, Vosi alleges that Motorola willfully infringed its patents, which if proven could result in an award of treble damages. 35 U.S.C. §284. Willful infringement consists of deliberate disregard of the patentee's rights. *Vulcan Engineering Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1378 (Fed. Cir. 2002). "Thus the focus is generally on whether the infringer exercised due care to avoid infringement, usually by seeking the advice of competent and

93

objective counsel, and receiving exculpatory advice. When it is found that the infringer acted without a reasonable belief that its actions would avoid infringement, the patentee has established willful infringement ...." *Id.* If a party claims reliance on advice of counsel to defend against a claim of willful infringement, it waives its attorney-client and work-product privileges with respect to the subject matter of the legal advice relied upon. *See In re Pioneer Hi-Bred International, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *Eli Lilly & Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 149 F. Supp. 2d 659, 661 (S.D. Ind. 2001); *Thermos Co. v. Starbucks Corp.*, No. 96 C 3833, 1998 WL 781120, at *1 (N.D. Ill. Nov. 3, 1998).

Motorola, which evidently received opinions from counsel regarding the Vosi patents, is assessing whether it should rely on those opinions to defend against the claim of willful infringement. It has filed a motion for protective order, seeking a ruling on the scope of the waiver that will exist if it elects to rely on advice of counsel. This is an appropriate procedure; it permits a party to make a fully-informed and intelligent decision whether to rely on advice of counsel with full knowledge of the consequences of the decision. *Cf. Quantum Corp. v. Tandon Corp.*, 940 F.2d 642, 643-44 (Fed. Cir. 1991) (suggesting bifurcation of the issue of willfulness as a way of relieving party of dilemma of whether to waive privilege).

Motorola wants the Court to impose three limitations on the scope of any such waiver. First, Motorola says that it would rely only on advice concerning the validity of Vosi's patents; it seeks to limit the waiver to opinions concerning validity, not those concerning infringement or other subjects. The Court agrees with Vosi that this cuts it too narrowly. It is true, as noted above, that a waiver of the attorney-client privilege ordinarily concerns only the subject matter of the communications that are disclosed. *See Micron Separation, Inc. v. Pall Corp.*, 159 F.R.D.

2

361, 365 n.8 (D. Mass. 1995) (reliance on counsel's advice regarding validity does not waive privilege with respect to advice regarding infringement). But as Vosi points out, opinions regarding validity are necessarily based on a particular construction of the claims of the patent. It is conceivable that Motorola could have received an opinion of invalidity that was based on a very broad construction of the claims, while also receiving an opinion of non-infringement that was based on a narrower construction. In that hypothetical situation, knowledge of the narrower construction could cast doubt on the premise of the opinion of invalidity and thus could bear on whether it was reasonable for Motorola to rely on that opinion. *Cf. Micron*, 159 F.R.D. at 363 (later opinions which "cast doubt on the premises or bases of the earlier opinion" relied upon are within scope of waiver of privilege).

In short, opinions that involve issues other than validity but that include a construction of the patent concern, to that extent, the same subject matter as opinions regarding validity. It would be unfair to permit Motorola to make a selective disclosure of opinions that have a bearing on the validity issue. *See Abbott Laboratories v. Baxter Travenol Laboratories, Inc.*, 676 F. Supp. 831, 832 (N.D. Ill. 1987). For these reasons, if Motorola chooses to rely on its counsel's opinions regarding validity, it must disclose all pre-suit communications of counsel on subjects other than validity insofar as they include a construction of the same patent or patents that are the subject of any validity opinion.

Vosi has agreed to the second limitation proposed by Motorola: that any waiver be limited to matters that were actually communicated to Motorola, and should not include counsel's mental impressions, thought processes, and work product that were not communicated to Motorola.

Motorola's proposed third limitation concerns the post-suit opinions of its trial counsel.

3

Motorola's trial counsel are not the same lawyers who provided the pre-suit opinions on which it may rely to defend against the claim of willful infringement. Motorola argues that trial counsel's opinions should retain their protection irrespective of Motorola's reliance on advice of pre-litigation counsel. The Court agrees with this proposed limitation. *Accord, e.g., Thermos*, 1998 WL 781120, at *5; *Micron*, 159 F.R.D. at 365-66. The willfulness or non-willfulness of Motorola's conduct logically depends upon the advice it received before suit was filed. Moreover, if a party's reliance on advice of counsel to defend a claim of willful infringement resulted, without more, in a waiver of the attorney-client and work-product privileges pertaining to the opinions of its trial counsel, it would inappropriately chill communications between trial counsel and client and would impair trial counsel's ability to give the client candid advice regarding the merits of the case.

In sum, the Court rules as follows:

1) If Motorola relies on an opinion of counsel regarding validity, it must provide all other opinions of counsel that were communicated to Motorola regarding the issue of validity and all other opinions that were communicated to Motorola that include a construction of any of the patents in suit.

2) Defendants shall not be permitted to take discovery as to any mental impressions, thought processes, and work product of counsel that were not communicated to Motorola.

3) Defendants shall not be permitted to take discovery of post-suit opinions or work product of Motorola's trial counsel.

**2.    Motorola's fourth motion to compel discovery**

In its fourth motion to compel discovery, Motorola contends that Vosi's attorney-client

4

and work-product privileges should be deemed waived pursuant to what is commonly called the "crime-fraud" exception to those privileges. Communications between attorney and client that are made in furtherance of a crime or fraud are not protected by the attorney-client or work-product privileges. *See, e.g., Clark v. United States*, 289 U.S. 1, 15 (1933); *In re Grand Jury Subpoenas*, 144 F.3d 653, 660 (10th Cir. 1998) (exception applies to work-product privilege as well as attorney-client privilege). The party claiming that the crime-fraud exception applies must make a *prima facie* showing that a crime or fraud was committed. *Clark*, 289 U.S. at 15; *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000). If the exception applies, the privilege is deemed waived as to documents and communications in furtherance of the crime or fraud. *Spalding*, 203 F.3d at 807; *see also, e.g., In re Bankamerica Corp. Securities Litigation*, 270 F.3d 639, 642 (8th Cir. 2001).

A patent applicant owes the Patent Office a duty of candor and good faith, *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1178 (Fed. Cir. 1995), which runs from the date of its application until the date a patent is issued or the application is abandoned. 37 C.F.R. §1.56(a). The crime-fraud exception to the attorney-client and work-product privileges applies when a *prima facie* showing is made that a patentee procured its patent through a fraud on the Patent Office. *Spalding*, 203 F.3d at 807. The party claiming the exception must make a *prima facie* showing that the patent applicant made a willful misrepresentation or omission of a material fact before the Patent Office, with the intent to deceive the examiner, and upon which the examiner actually relied. *See id.; Leybold-Heraeus Technologies, Inc. v. Midwest Instrument Co.*, 118 F.R.D. 609, 614 (E.D. Wis. 1987).

Motorola contends that attorney David Duckworth, who prosecuted Vosi's patent

5

applications that led to issuance of the patents in suit, committed a fraud on the Patent Office in connection with the prosecution of the patents. It says that Duckworth knowingly submitted a false affidavits from Ivano Stamegna (the inventor and a defendant in this case) in support of the patent applications, and that Duckworth knowingly failed to advise the Patent Office of prior art that invalidated certain of the claims in certain of the patents. We consider these contentions in turn.

In November 1997, the Patent Office rejected all of the claims of the application that ultimately led to issuance of U.S. Patent No. 5,797,088, citing as prior art another patent, the Nagashima patent, which had been issued after Stamegna's application was filed. Duckworth advised Stamegna about the possibility of "swearing behind" the Nagashima patent – in other words, showing that Stamegna had actually conceived of his invention before the date of Nagashima's application, May 20, 1993, and had engaged in activities from before that date continuously to the filing of his own application showing that he was diligent in making the application. Duckworth Dep. 58-61. Following this discussion, Stamegna drafted and sent to Duckworth a statement that he had conceived of the invention in late 1991, but that "in 1992, due to the real estate depression in California, my priorities got shifted and I had to put my invention on hold. In 1993, I began working on it and in 1994 I pursued it diligently putting a lot of energy into the unit ...." Motion to Compel, Ex. L. Duckworth then prepared a declaration which Stamegna signed and Duckworth submitted to the Patent Office. The declaration included a statement that Stamegna had conceived of the invention prior to May 20, 1993, and that "[f]rom prior to May 20, 1993, I was diligent in attempting to reduce the invention to practice until at least October 30, 1995," the date of Stamegna's patent application. Motion to Compel, Ex. M, ¶¶1, 3.

6

He provided details in support of the claim of diligence. *Id.* ¶¶4-5. The patent examiner relied on Stamegna's statements in allowing the claims in his patent applications. Motion to Compel, Ex. N.

Motorola argues that Stamegna's declaration that Duckworth submitted to the Patent Office was inconsistent with the statement that Stamegna had provided to Duckworth and that this reflects an intent to deceive the examiner. Specifically, it says that Stamegna's initial statement to Duckworth reflected that he was not diligent until 1994 but that his declaration stated that he had been diligent since before May 20, 1993. This is, in the Court's view, a misinterpretation of Stamegna's initial statement. Stamegna did not say that he *was not* diligent *until* 1994; rather he said that he *was* diligent *in* that year. The two propositions are materially different. The fact that Stamegna (a non-lawyer) had, in his initial statement, used the word "diligently" only with respect to his activities in 1994 does not preclude the possibility that he had exercised diligence, as that term is used in patent law, in 1993. Indeed, Stamegna's initial statement to his attorney included an assertion that he had begun working on the invention in 1993, which is consistent with his later declaration to the Patent Office, and that declaration gave a detailed account of what he had done before May 20, 1993 to support the claim of diligence. Motion to Compel, Ex. M, ¶¶4-5. Based on the evidence submitted to the Court, the most reasonable inference is that after inquiring of Stamegna upon receiving his initial statement, Duckworth honestly believed that Stamegna could claim that he had been diligent prior to May 1993. The submission of the declaration does not support invocation of the crime-fraud exception.

Motorola's other claim of a fraud on the Patent Office arises from a statement by Duckworth in a document he submitted in support of a patent application that Vosi currently has

7

pending. Duckworth's statement refers to matters that had taken place in connection with his prosecution on Vosi's behalf of two of the patents involved in this case, U.S. Patent Nos. 6,058,298 and 6,058,078. The '298 patent was issued on May 2, 2000, and the '078 patent was issued on July 4, 2000. Vosi's pending patent application, Application No. 09/561,788, is, as best as we can determine, a continuation application relating to the subject matter of the earlier patents.

In support of the currently-pending application, Duckworth submitted a document to the Patent Office in which he recounted discussions he had in June 2000 with Marsha Banks-Harold, the examiner on the applications that led to issuance of the '298 and '078 patents. Duckworth stated that on June 1, 2000, he called Banks-Harold and advised her that he had uncovered two prior art references which appeared to anticipate "numerous claims, but not all claims" of the '088 patent – which had been issued in 1998 – and also implicated "allowed claims" of the applications that led to the '298 and '078 patents. Motion to Compel, Ex. O. Duckworth stated that he told Banks-Harold that this prior art had been uncovered after he had received Notices of Allowance on both the '298 and '078 patents, but before the '298 patent was actually issued (the conversation took place after issuance of the '298 patent but before issuance of the '078 patent). Duckworth advised Banks-Harold that it was his understanding that an applicant finding himself in these circumstances was permitted to allow a patent to issue despite the belatedly-discovered prior art, so long as the claims that were the subject of the prior art were disclaimed after issuance. Duckworth stated that after consulting with her supervisor, Banks-Harold reported to him that Vosi had two options: it could "withdraw the [pending] application from issuance and abandon the application and then prosecute a continuation application in which the relevant [prior art] information was provided to the Patent Office," or "could allow the patent to issue and thereafter

8

disclaim claims which were considered invalid." Motion to Compel, Ex. O. Duckworth said that he later advised Banks-Harold that he would allow the '078 patent to issue and would then prosecute a continuation application which disclosed the relevant prior art, prosecuting the claims believed to be allowable. *Id.*

In essence, Duckworth and Vosi decided to take the best of both of the proposals the patent examiner had made – in a sense, to have their cake and eat it too. Though the examiner had proposed making a new continuation application in conjunction with a withdrawal of the then-pending application, or alternatively a disclaimer of invalid claims after issuance of the then-pending patent, Vosi and Duckworth elected to make a continuation application without withdrawing the pending application, and Vosi never disclaimed the purportedly invalid claims after allowing the patent to issue. Thus far there has been no explanation of why Vosi or Duckworth chose this course.

But although this course of conduct is suggestive of what could fairly be called sharp practices, the Court does not see how it was a fraud on the Patent Office with respect to the issuance of either the '298 or the '078 patent. Motorola has not attempted to show that Duckworth's claim regarding the timing of his knowledge of the prior art in question was false – for example, that his knowledge of the prior art actually predated Vosi's receipt of the notice of allowance of either of the patents. Nor has Motorola tried to refute Duckworth's claim that the examiner in effect said that it was permissible for an applicant faced with this situation to allow a patent to issue without making further pre-issuance disclosures. And Motorola has not attempted to refute Duckworth's claim that he told the examiner, prior to the issuance of the '078 patent, that he was going to permit that patent to issue, and only then submit a continuation application. On

9

the present record, the Court cannot say that Duckworth or Vosi committed a fraud on the Patent Office by allowing either patent to issue. Indeed, Duckworth's disclosure of the prior art to the examiner before the '078 patent was issued was the antithesis of fraud, and the issuance of that patent after the examiner knew that Duckworth would allow it to issue and would only then submit a continuation application disclosing the prior art is indicative that the examiner was not defrauded with regard to the '078 patent and that the non-disclosure of the prior art before issuance of the '298 patent likewise was not material.

Motorola argues that Duckworth's and Vosi's failure to follow the advice they say they got from the patent examiner indicates that they were defrauding the Patent Office from the outset. But this is a *non sequitur*. There is no basis for the Court to infer from Duckworth's post-issuance conduct that his statements regarding the timing of his discovery of the prior art were untrue. It is just as likely that the determination not to disclaim the allegedly invalid claims resulted from a decision made after the issuance of the patents. Though Duckworth's and Vosi's failure to follow the examiner's alleged advice is unexplained, it does not constitute *prima facie* evidence of an intent to defraud the Patent Office while the '298 and '078 patent applications were still pending.

If indeed there was a fraud, it took place after issuance of the patents, when Vosi chose not to disclaim the patents and then attempted, both prior to and during this litigation, to enforce them against Motorola. But this was not, in the Court's view, a fraud on the Patent Office. Motorola correctly argues that a patent applicant's duty of candor to the Patent Office extends through the date the patent is issued, *see* 37 C.F.R. §1.56(a), but it cites no authority for the proposition that a patent holder has a duty of candor vis-a-vis the Patent Office beyond the date of issuance. And Motorola does not contend that Vosi or Duckworth has made any knowing misrepresentations or

10

omissions of material facts in the currently-pending continuation application.

Motorola also suggests that Vosi's attempt to enforce the patents prior to Motorola's filing of this action, its pursuit of a counterclaim for infringement based on the two patents, and its refusal (as yet) to concede, in response to interrogatories, that the patents are invalid in any respect is also evidence of fraudulent intent. But even if this were so, it would not be *prima facie* evidence of an intent to defraud the Patent Office. Once the patents had issued, the potential victims of the claimed fraud were the public and persons or entities (like Motorola) against whom defendants attempted to enforce a patent that they arguably should have disclaimed, not the Patent Office.

Fraud consisting of the knowing pursuit of baseless litigation may bring the crime-fraud exception into play, *see, e.g., In re Richard Roe, Inc.*, 168 F.3d 69, 71-72 (2d Cir. 1999), and there is authority for the proposition that pursuit of a claim of infringement of a patent that the holder knows was invalidly obtained is sufficient to invoke the exception. *Leybold*, 118 F.R.D. at 615 (citing *Kockums Industries Ltd. v. Salem Equipment, Inc.*, 561 F. Supp. 168 (D. Ore. 1983)). But that is not the focus of Motorola's motion. Moreover, a claim of crime or fraud based on the conduct of litigation presents issues that are even more sensitive than those involved when the claim is based on pre-litigation conduct. *See generally Richard Roe, Inc.*, 168 F.3d at 71-72. Without a better sense of exactly what claims of what patents Vosi is and is not relying upon to support its allegations of infringement, the Court is not prepared to say that those allegations, or any significant part of them, have "little or no legal or factual basis," let alone that the litigation has been carried on for the purpose of furthering a fraud. *Id.* at 71.

For these reasons, the Court denies Vosi's motion to compel, though the denial is without

11

prejudice to later reassertion following further discovery of the particulars of Vosi's claims in this litigation. In that regard, the Court, on its own motion, directs Vosi (if it has not done so already) to provide a direct answer to Vosi's interrogatory number 20, which requests identification of which claims of the Vosi patents are invalid. Under the circumstances present here, Vosi's answer dated August 5, 2002, which simply refers Motorola to "documents which will be produced by Defendants," is insufficient. A direct answer is to be provided within five days of entry of this order.

## Conclusion

For the reasons stated above, Motorola's motion for protective order [docket item 86-1] is granted in part and denied in part, and its fourth motion to compel [item 80-1] is denied.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   August 19, 2002